KELLUM, Judge.
The appellant, Courtney Dickerson, was convicted of robbery in the first degree, a violation of § 13A-8-41, Ala.Code 1975, and was sentenced to 40 years’ imprisonment.
The record indicates the following facts. On July 30, 2010, Ray Whitworth, the owner of several gasoline stations/convenience stores in Walker County, became concerned that one of his,stores might be the target of a robbery after an employee at one of his stores informed him that several people were acting suspiciously near the store. Whitworth took this warning seriously because another of his stores had been robbed two days earlier. Whitworth traveled to the store and watched as a black Chevrolet Impala automobile drove past the store several times that afternoon.
Later that night, Whitworth returned to the store with an AK-47 rifle and waited in his car. After seeing, the black Impala drive past the store again, Whitworth entered the .store, told the cashier that it looked like they were about to, get robbed, and then returned to his car. Later, Whit-worth saw two men scale a wooden fence adjacent to the store. The men briefly paused behind a trash dumpster, pulled out guns, and began walking toward the entrance to the store. Whitworth testified that he got out of his car and yelled at the men. According to Whitworth, he engaged in a brief shootout with the two men before the men fled the scene.
.Thereafter, Dickerson was arrested in connection with the suspected robbery; he was subsequently indicted by a Walker County grand jury. On January 28, 2011, Dickerson was found indigent and counsel was appointed to represent him. Dickerson was indicted for first-degree robbery by a Walker County grand jury during its March 2011 term.
Dickerson’s arraignment was set for-November 21, 2011; however, Dickerson failed to appear. On November 23, 2011, Dickerson’s counsel moved to withdraw, stating that counsel had “been unable to contact Courtney Dickerson for at least 30 days and ... communication has deterio *1238 rated between Courtney Dickerson and myself.” (C. 10.) No immediate action was taken on counsel’s motion to withdraw.
On October 10, 2012, Dickerson’s case was set for “first call” on November 1, 2012, and for trial on November 13, 2012. On November 2, 2012, counsel’s motion to withdraw was granted. Dickerson failed to appear for trial, and on November 20, 2012, an arrest warrant was issued for Dickerson.
Dickerson was arrested and taken into custody on November 1, 2013; he remained in custody until his trial. On May 8, 2014, Dickerson executed an “Affidavit of Substantial Hardship” form, indicating that he had no assets or income and requesting a court-appointed attorney. On June 20, 2014, the circuit court denied Dickerson’s request by marking the box on the form beside the statement, “Affiant is not indigent and request is denied.” (C. 20.)
Dickerson’s trial began on August 12, 2014. Immediately before the trial started, a pro bono attorney stepped forward and asked the circuit court to reconsider its decision not to appoint counsel. This led to the following exchange:
“[Pro bono attorney]: Your Honor, Mr. Dickerson is here on a matter of which — with a crime, which is a crime of ten years, I think, to life, impose a sentence of ten years to life, and that would, Your Honor, be — we would object to going forth on such a crime without a lawyer. I’m present here for this fact and this and this only, just to make an objection prior to you going forth with the trial without him being represented by-an attorney.
“He is asking the Court to appoint him an attorney. He didn’t know that his other attorney had withdrawn, Your Honor.
[[Image here]]
“Judge, such a serious nature of this crime, it would require — that the law would require you to appoint an attorney. As I understand Mr. Dickerson has requested that the Public Defender represent him. I believe he’s been denied. He doesn’t have no [sic] funds. He has no income at all. He’s been incarcerated and unable to hire an attorney, and he wants an attorney appointed.
“THE COURT: Well, I’ve seen him in court many times. He’s actually a very able bodied and capable young man who is able to work and capable of working, and he has had plenty of time to make arrangements to hire an attorney and work out some sort of payment, but he has elected not to and the Court does not find him to be indigent, so he is here by choice without an attorney at this time. And he’s had plenty of time to get ready for this, to make — to do whatever, to hire someone or make whatever arrangements, but he’s elected not to do so, so today is the trial day.
“[Pro bono attorney]: Judge, he was in jail. He couldn’t get an attorney because he wasn’t out to get an attorney. Judge, he is indigent. I know him personally.
“THE COURT: Well, he may be indigent. He may have elected not to work during his lifetime, but he is — in looking at him, he’s capable, able-bodied male that is fully capable of working and hiring an attorney to represent him in this matter. He has all sorts of means that he could have used to have acquired an attorney, so he’s had plenty of chances, but today is trial day.
“[Pro bono attorney]: Judge, can we take some testimony from Mr. Dickerson just for that, for indigency?
*1239 “THE COURT: We have already been through that. We’re not going to go through it again.
[[Image here]]
“He’s known this day was coming, and having practiced law myself for 30 years before I came on the bench, I’ve had many a client that was in jail that didn’t have any money in their pocket but were able to work — that I was willing to work out arrangements for me to represent them. Mr. Dickerson is absolutely no different than that.
“As far as I’m concerned and as far as the Court is concerned, he’s had every opportunity and has elected to come to this point voluntarily.
[[Image here]]
“This Indictment was handed down on March 16,2011. He’s had plenty of time to make arrangements to get an attorney and, quite frankly, I think there was a good bit of time that he was not incarcerated that he could have made arrangements to hire an attorney if he wanted to. Again, a very capable, I can tell by looking at him he’s a very intelligent gentleman, he’s physically fit, certainly where he could have made arrangements to hire an attorney if he wanted to, and he’s just elected not to, so here we are.”
(R. 4-10.)
Although the circuit court did not appoint counsel to represent Dickerson, it did appoint a standby attorney. In appointing the standby attorney, the circuit court stated:
“Mr. Dickerson, I’ve assigned Mr. Sam Bentley from the Public Defender’s Office to assist you in procedural matters. He’s not going to give you advice on how to try the case, tactical advice on how to try the case, but .he is simply going to be there to basically tell you what the procedure is and what happens next and so forth and so on like that and to answer questions for you in that regard.”
(R. 13-14.)
Afterwards, the trial began and Dickerson represented himself throughout the proceedings. During trial, Dickerson’s brother asked the circuit court to appoint counsel for Dickerson. The circuit court denied the request. Before closing arguments, Dickerson moved that the jury be quashed and that the case be retried with counsel; the circuit court denied Dickerson’s motion.
The jury convicted Dickerson of robbery in the first degree. This appeal followed.
Dickerson contends that the circuit court violated his Sixth Amendment right to counsel when it failed to appoint counsel for him and forced him to go to trial without representation.
The Sixth Amendment to the United States Constitution, provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court held that representation by counsel is essential to protect the fundamental rights of life and liberty of an accused in a criminal prosecution, and that counsel must therefore be appointed if the defendant is indigent. In reaching its decision, the Court explained:
“[Rjeason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state, and federal, quite properly spend vast sums of money to establish machinery to try defendants *1240 accused of crime. Lawyers-to prosecute are everywhere deemed essential to protect the public’s interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers.they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread. belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguard's designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant’s need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in. Powell v. Alabama [287 U.S. 45 (1932)]:
“ ‘The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or: otherwise inadmissible. He- -lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though»he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.’ 287 U.S., at 68-69.”
372 U.S. at 344-45.
Likewise, the Alabama Constitution also provides that, “[i]n all criminal prosecutions, the accused has a right to be heard by himself and counsel.” Art. I, § 6, Ala. Const.1901.
In addition to these constitutional protections, Alabama statutory law mandates court appointed representation for indigent defendants. Specifically, Rule 6.1, Ala. R.Crim. P., provides:
“(a) Right to Counsel. A defendant shall be entitled to be represented by counsel in any criminal proceedings held pursuant to these rules and, if indigent, shall be entitled to have an attorney appointed to represent the defendant in all criminal -proceedings in which representation by counsel is constitutionally required. The right to be represented shall include the right to consult in private with an attorney or the attorney’s agent, as soon as feasible after a defendant is taken into custody, at reasonable times thereafter, and sufficiently in advance of a proceeding to allow adequate preparation therefor.
“(b) Waiver of Right to Counsel. A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant’s waiver of the -right to counsel, the court shall in *1241 form the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings.
“If a non-indigent, defendant appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the cause shall proceed. If an indigent defendant who has refused appointed counsel in order to obtain private counsel appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the court shall appoint counsel unless the indigent defendant waives his right under this rule. If the indigent defendant continues to refuse appointed counsel, the cause shall proceed.”
Rule 6.3, Ala. R.Crim. P., defines an indigent as “a person who is financially unable to pay for his or her defense.” When making an indigency determination, a trial court must examine the “ability to pay as a variable depending on the nature, extent and liquidity of assets, the disposable net income of the defendant.” § 15-12-5(b), Ala.Code 1975. See also Committee Comments to Rule 6.3, Ala. R.Crim. P. In making this determination, the assets of friends and relatives are not included within the “assets” referred to in § 15—12—5(b) unless they had a legal duty to pay for the defense. See Quick v. State, 825 So.2d 246 (Ala.Crim.App.2001). “The determination of indigency sufficient to require the appointment of trial counsel rests within the discretion of the trial judge.” Warren v. City of Enterprise, 641 So.2d 1312, 1315 (Ala.Crim.App.1994). However, this Court has held that a trial court abuses its discretion when it denies the appointment of counsel without making a sufficient inquiry into the indigency of a defendant. Id. at 1316.
In the instant case, the circuit court erred when it determined that Dickerson was not indigent. The circuit court first recognized that Dickerson was indigent when it appointed his original counsel in 2011. Before trial, Dickerson executed an affidavit of substantial hardship, indicating that he had no income or assets, and there is nothing in the record that disputes this claim. At trial, the circuit court acknowledged that Dickerson “may be indigent” before inexplicably determining that Dickerson was not indigent. (R. 7.) In making its determination, the circuit court did not reference Dickerson’s assets or income. Instead, the circuit court relied on Dickerson’s family’s ability to pay for an attorney and Dickerson’s physical ability to work. At that time, Dickerson’s family had no legal responsibility to pay for his defense; thus, its consideration in Dickerson’s indigency determination was erroneous. Furthermore, Dickerson’s physical ability to work did not make him financially able to pay for his defense. Accordingly, the circuit court abused its discretion when it denied Dickerson counsel without making a sufficient inquiry into his indigency.
The circuit court also erred when it determined that Dickerson had voluntarily waived his right to an attorney by failing to appear for his November 2012 trial. The record clearly indicates that there was no express waiver of counsel given that Dickerson requested appointed counsel before trial, during trial, and throughout his appeal. We also cannot say that Dickerson implicitly waived his right to counsel, even if we agreed with the circuit court’s suggestion that Dickerson was requesting counsel as a stall tactic.
In Cobble v. State, 710 So.2d 539 (Ala.Crim.App.1998), this Court reversed the conviction for a “partially indigent” defendant who dismissed his attorney shortly before trial and was ultimately forced to represent himself at trial. In reaching our decision, we stated:
*1242 “Although we do not necessarily disagree with the trial court’s findings that the appellant was engaging in dilatory tactics by making unwarranted accusations against his trial counsel, we cannot uphold the trial court’s peremptory ruling that the appellant, as a result of these actions, knowingly waived his right to trial counsel .. [T]he trial court, instead of requiring the defendant to represent himself at trial, should have done one of the following: (1) denied the attorney’s motion to withdraw; (2) appointed a new attorney to represent the defendant at trial; (3) granted the defendant’s request for a continuance to allow him to retain counsel; or (4) determined whether the defendant wanted to represent himself and, if so, engaged the defendant in a colloquy to determine whether he understood all of the implications involved in self-representation. Any of the above actions would have been appropriate here; requiring the appellant to represent himself was not.”
710 So.2d at 542.
Given the circumstances of this case, Dickerson was deprived of his right to counsel as defined by Rule 6.1, Ala. R.Crim. P., and guaranteed by the Federal and State Constitutions. Accordingly, the judgment of the circuit court is reversed and this case is remanded to the circuit court for further proceedings consistent with this opinion.[1]
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Because we are reversing the judgment for reasons discussed above, we pretermit discussion of Dickerson's challenge to the sufficiency of the evidence.