WELCH, Judge.
Jonathon Lee Peake[1] appeals from his conviction, pursuant to a guilty plea, for manslaughter for driving his car while he was intoxicated and causing a head-on collision that resulted in the death of the driver of the other vehicle. § 13A-6-3(a)(1), Ala.Code 1975. The trial court sentenced Peake to 15 years’ imprisonment; that sentence was split, and he was ordered to serve 3 years’ imprisonment and 3 years on probation. We reverse.
The circumstances leading up to Peake’s guilty plea are vital to an understanding of our holding, so we set them out in detail. Peake was indicted on June 27, 2011. Peake was declared indigent, and the trial court appointed Ed Greene to represent him. Greene remained Peake’s attorney of record through arraignment, through several continuances, and up until the trial date of May 5, 2014. On the day of trial, Peake contacted and retained Bruce Maddox to represent him during the trial. Greene filed a motion to withdraw on the ground that Peake had, contrary to Greene’s advice, “insisted on pursuing a course of action that [was] imprudent.” (C. 24.) Greene further alleged that continued representation had “been rendered unreasonably difficult by the Defendant.” (C. 24.) Finally, Greene stated that Peake had informed him that he had retained Maddox.
The court held a hearing with the parties, and Maddox participated by telephone. The court stated that Peake had said he had “fired” Greene, and that it had released Greene because Peake had retained new counsel. Maddox stated that Peake had contacted him that morning; that he was willing to undertake Peake’s defense and that a friend of Peake’s had insured payment of his- fee; and that a continuance was necessary because he had court appearances and obligations to other clients for the next three days and because his knowledge of the case was limited. The State opposed the continuance and noted that it was prepared to go to trial that day and that witnesses and the victim’s family members were in town for trial. The State also noted that, in a recent hearing, Peake had stated that he was satisfied with Greene’s services. Finally, the prosecutor stated that Peake was “using what he can from the system, in the State’s opinion, to basically get a very fancy continuance.” (R. 5.)[2] Maddox told *1251 the court that he would not take a case if he believed he was being retained for purposes of delay and that he thought Peake had valid reasons for wanting to change the nature of his defense from the defense Greene had proposed. The State argued that Greene had been practicing law for nearly 50 years and had tried many cases and that he was better positioned than Maddox to know all of the evidence and to advise Peake.. The State further argued that bringing in a new attorney immediately before trial was “the oldest trick in the book” to secure a delay. (R. 8.) Peake told the court that Greene had failed to research the case and had failed to provide him with some items obtained during discovery and that earlier that day he had become concerned that he would not get a fair trial with Greene as his counsel because Greene’s position was that Peake would be convicted if he went to trial and that he should plead guilty. He further stated that he was “pretty much shook and frustrated” with Greene’s approach to the case, and that when he sought advice from Maddox that day, Maddox indicated that some points had not been addressed and that he thought Peake had a chance if he went to trial. (R. 16.) The State noted that Greene’s position had always been that the evidence against Peake was overwhelming. Peake pointed out, and the State acknowledged, that the April 24, 2014, hearing at which he had voiced no objection to Greene’s representation had been held for the limited purpose of creating a record to disclose that Greene had prosecuted a case against Peake years earlier. At that hearing, Peake stated that he was aware that Greene had prosecuted him in a previous case, but that he had no problem with Greene now acting as his defense attorney. (R2.4-5.)
The trial court denied ■ Peake’s. motion for a continuance and stated:
“But at this juncture, Mr. Maddox, I’m going to deny his' request for a continuance. I’m prepared to go forward and strike his trial. The jury is out there. We’re going to alphabetize the jury.
“If you want to stay and talk to him, you can, but I’m prepared to strike his jury. As soon as I alphabetize them, I’m going to voir dire my members.”
(R.17.)
Maddox replied:
“Well, sir, I’m not in a position to do ■anything but chat with him. If he’s going to wind up representing himself; I think he’s going to be at a terrible, terrible disadvantage. I understand Why he wanted to change his attorney, and I concur in his reasons. But — and I dó note whiles listening, I was also looking at Alacourt [an electronic court-system database], the first two continuances in this case were requested and received by the State, which was because they couldn’t get a witness there. And, basically, the defendant is in a position at this point that he has chosen a new lawyer, and he can’t get his new lawyer, there. And he needs a continuance for that reason. I think there was maybe a fairness factor there that ought to be considered, but I listened to the State talking about him trying to finagle a continuance. They’ve done it, too.”
(R. 18-19.)
The court concluded the telephone conference by stating:
‘We were here this morning. This is the first time that I’ve heard a request *1252 for continuance or him. trying to get another lawyer. He did,not express any of that this morning. .Maybe we could have considered that this morning. But when we get back from lunch ready to strike, he indicated he had released his lawyer,
“I’m going to deny his request for continuance. I’ll allow him to continue to chat with you, if you desire. But as soon as I alphabetize my jury, we will be ready'to strike this case.”
(R. 19.)
The court then held a proceeding on the record so that Greene could officially withdraw based on Peake’s hiring of a new attorney and on the existence of an irreconcilable conflict. The State then informed the court that Peake had received several traffic citations before the underlying incident occurred, and that he had outstanding warrants in another jurisdiction.' The State requested that Peake’s bond be revoked. Peake stated that the State had used that method in the past to prevent defendants from obtaining counsel and that it would prevent him from continuing to. work to be able to pay Maddox. The trial court informed Peake that he was going to be held op the pending warrants. The court then explained:
“The Court’s going to hold you in custody. The Court’s going to allow the district attorney to present to you evidence for your case for trial and give you a chance to-review it tonight. If you’re ready to go to trial in the morning, we’ll be ready to try your case in the morning. If you’re not ready to go to trial in the morning, you’re going to be detained pending your next trial date. Do you understand that?
“So we will see you in the morning and give you, a chance to go over your documents and review yourself, and get ready for trial in the morning.
“You are now in custody, pursuant to the warrants.”
(R. 28.)
Further discussion of the revocation of Peake’s bond continued and the trial court then said:
“The Court’s going to allow you to be released today, not necessarily from custody, and not allow you to go home tonight. We’re going to hand you the discovery the State provided to your previous lawyer to allow you .to review that information and be ready to strike the jury in your 'case in the morning.
“It’s going to be up to you as to whether or not you retain Mr. Maddox and Mr. Maddox can get here. But'we understand from his conversation, he’s not going to be able to be here. I will have a lawyer on call in the morning to sit with you, just in case you have questions about your- case. • But I want to give you an opportunity to fully go over your discovery and fully be prepared to 'try your case in the morning. Do you understand that?”
(R. 30.)
The court then asked Peake whether he was suffering from any type of mental condition; whether he was under a doctor’s care; whether he had reviewed any information from the case with Greene; how long counsel had been appointed; what grade he had completed in school; and how long he had been employed in the construction field. Peake said that he was not suffering from a mental condition and was not under a doctor’s care, that he had reviewed with Greene only a limited amount of the information in his case during the two years Greene had been appointed his counsel, and that he had dropped out of school and then obtained a General Equivalency Diploma or a G.E.D. Peake further stated that he had obtained *1253 a certificate in paralegal studies through a correspondence course and had obtained two appellate reversals. The court noted that Peake was somewhat familiar with the legal system because he had won two appeals.[3] The discussion continued:
“MR. PEAKE: In appeals, you know. Trial, I don’t have a good — my knowledge in trial is very limited, but overnight, if you will give me the night, I’ll be on — you know, I will do my best to get myself where I need to be, if I got to represent myself.,
“THE COURT: Yes, sir, you have to represent yourself or you can get a lawyer-
“MR. PEAKE: You’re looking at my life, so—
“THE COURT: Yes, sir.
“MR. PEAKE: — I will be on it tonight.
“THE COURT: Okay. And I mil have somebody available to answer questions for you and with you tomorrow.
“MR. PEAKE: I would highly appreciate it.”
(R. 33-34.)(Emphasis added.)
After further discussion, Peake said he thought the attorney would be available to him overnight, and the court explained that the attorney would be available the following day in court. The court then informed Peake that he would be held in jail overnight. Peake sought clarification of the court’s order:
“MR. PEAKE: Oh, okay. I thought you were going to let. me go to the house—
“THE COURT: Oh, no, sir.
“MR. PEAKE:-" — tonight where I can have access to computer research or whatever?
“THE COURT: No, sir. You will be in custody.
“MR. PEAKE: Overnight, I wouldn’t be able to prepare for a trial.
“THE COURT: No, sir. You will be in custody, and you’re going to be provided your discovery.
“You all can execute the warrant on him. He’s in your custody—
“MR. PEAKE: I would need to—
' “THE COURT: — and we will see him in the morning at time o’clock.
“MR. PEAKE: I wouldn’t have access to the research that I would need overnight, Your Honor. ' ■
“THE COURT: They do not have that in jail. I’m sorry.
“MR. PEAKE: I mean, is it any way that we can—
' “THE COURT: I can’t control what they provide for you at the jail.”
CR-13-1347 (R. 36-37.).
The following day Peake was brought from jail to the trial- court. He had no legal representation. The trial, court made an attorney identified in the record only as “Mr. Fields” available as standby counsel. The record indicates that the trial court conducted voir dire that morning and that plea negotiations took place that afternoon. Peake represented himself during those negotiations. After a brief period of negotiations, the trial court stated, “Let’s go to trial. I’m not going to stand and pause [sic] with Mr. Peake.”. (R. -40.) A short recess was taken, and Peake then accepted the plea agreement offered by the State. The trial court adjudged Peake guilty and *1254 sentenced him in accordance with the terms of the negotiated plea.
Maddox filed a motion on Peake’s behalf to withdraw the guilty plea, arguing as grounds that the plea had been involuntarily entered and otherwise did not comply with the provisions of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The trial court denied the motion without a hearing.
Peake argues that the trial court erred when it denied his motion to withdraw his guilty plea because, he says, the court violated his rights under the Sixth Amendment to the United States Constitution when it forced him to proceed to trial pro se without first ascertaining whether he had knowingly and intelligently waived his right to counsel and, as a result, his plea was involuntary because it was coerced.
The Sixth Amendment to the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” See also Art. I, § 6, Ala. Const.1901. A defendant has a Sixth Amendment right to'represent himself in a criminal case. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Supreme Court stated in Faretta: “When án accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must ‘knowingly and intelligently’ forgo those relinquished benefits.” Id. at 835.
The State does not address the merits of Peake’s claim of error; instead, it argues that Peake is not entitled to review of the issue because he did not first present the issue in his motion to withdraw his guilty plea. Peake argued in his motion to withdraw the guilty plea that the trial court had denied his motion for a continuance after he retained counsel and then forced him to represent himself. He further alleged that he accepted the plea agreement because he believed he could not adequately represent himself at trial and that, therefore, the plea-was coerced. Even if those allegations did not adequately present the issue, it was not waived for purposes of review. The deprivation of the right to counsel during critical stages of a criminal prosecution is a jurisdictional issue that can be raised at any time. See Ex parte Pritchett, 117 So.3d 356 (Ala.2012); Shaw v. State, 148 So.3d 745, 761 (Ala.Crim.App.2013) (“ ‘Unless a defendant has or waives assistance of counsel, the Sixth Amendment is a jurisdictional bar to a valid conviction and sentence.’ Berry v. State, 630 So.2d 127, 130 (Ala.Crim.App.1993).”); and Frost v. State, 141 So.3d 1103 (Ala.Crim.App.2012). Therefore, we address Peake’s, argument — that he was forced to represent himself during the trial proceedings and that his Sixth Amendment right to counsel was denied.
The detailed presentation of the proceedings in this case establishes that Peake was dissatisfied with appointed counsel and that he retained Maddox as counsel on the day his trial was scheduled to begin. The trial court denied Maddox’s request for a continuance so he could prepare Peake’s defense, it forced Peake to represent himself, and it then ordered him held in jail overnight, where Peake was unable to prepare his own defense. The following day Peake appeared pro se with standby counsel and entered a guilty plea. For the reasons below, we hold that these facts establish that Peake was denied his constitutional right to counsel.
*1255 This Court has been presented with factually similar cases, including Cobble v. State, 710 So.2d 539 (Ala.Crim.App.1998). Cobble “fired” appointed counsel approximately two weeks before trial was scheduled to begin, stating that he was dissatisfied with her, and appointed counsel was allowed to withdraw. Cobble then requested that the trial court appoint another attorney, but the court denied the request and ordered former counsel to act as standby counsel. The trial court stated that Cobble had deliberately created conflicts with appointed counsel and that Cobble had effectively waived his right to counsel. On the day of trial, Cobble requested a continuance so he could retain counsel. The trial court denied the request and stated that Cobble was engaging in dilatory tactics and that Cobble had not given any reason for his failure to hire counsel after appointed counsel withdrew. Cobble pleaded guilty. We reversed his conviction on appeal, holding that the trial court erred in finding that he had waived his right to counsel. We stated:
“‘“A waiver of counsel can only be ‘effectuated when the defendant asserts a clear and unequivocal’ right to self-representation.” Westmoreland v. City of Hartselle, 500 So.2d 1327, 1328 (Ala.Crim.App.1986), citing Faretta, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. If the record is not clear as to the defendant’s waiver and request of self-representation, the burden of proof is on the State. Carnley [v. Cochran], 369 U.S. [506] at 517, 82 S.Ct. [884] at 890-91, [8 L.Ed.2d 70 (1962) ]. Presuming a waiver from a silent record is impermissible. Cam-ley.’
“Tomlin [v. State ], 601 So.2d [124] at 128 [ (Ala.1991) ] (emphasis added); see also Stanley v. State, 703 So.2d 1027 (Ala.Crim.App.1997). In determining whether a defendant knowingly and intelligently waived his right to counsel, this court must look to the ‘totality of the circumstances’ in each particular case. Tomlin, 601 So.2d at 129.
“In the instant case, the record does not show that the appellant made a ‘clear and unequivocal’ waiver of his right to counsel. In fact, the record reveals that the trial court informed the appellant that he would be representing himself, even after the appellant asked the trial court to appoint another attorney to represent him. The appellant never expressed a desire to represent himself at trial.
“ ‘ “A valid waiver of counsel need not be express. However, courts are hesitant to validate an implied waiver. Nevertheless, a court may infer a knowing and intelligent waiver if the defendant fails to retain counsel after repeated urging by the court or discharges counsel in midtrial after explicit warnings.” ’ Wheeler v. State, 553 So.2d 652, 653 (Ala.Crim.App.1989), quoting Project: Criminal Procedure, 76 Geo. L.J. 921, 928-30 (1988) (emphasis omittéd). Here, however, not only was there no express waiver of the right to counsel by the appellant, but there was no implied waiver of that right. The record does not establish that the appellant was repeatedly urged by the trial court to obtain other counsel; nor does the record indicate that the appellant discharged his counsel in the middle of the proceedings after explicit warnings from the trial court.
[[Image here]]
“‘In Leslie v. State, 703 So.2d 1029 (Ala.Crim.App.1997); Stanley, supra, 703 So.2d at 1028; and Watkins v. State, 708 So.2d 236 (Ala.Crim.App.1997), three cases recently decided by this court which were factually similar to the instant case, we held that the trial court, *1256 instead of requiring the defendant to represent himself at trial, should have done one of the following: (1) denied the attorney’s motion to withdraw; (2) appointed a new attorney to represent the defendant at trial; (3) granted the defendant’s request for a continuance to allow him to. retain counsel; or (4) determined whether the defendant wanted to represent himself and, if so, engaged the defendant in a colloquy to determine whether he understood all of the implications involved in self-representation. Any of the above actions would have been appropriate here; requiring the appellant to represent himself was not.”
Cobble, 710 So.2d at 541-42. See also Dickersons v. State, 176 So.3d 1236 (Ala.Crim.App.2015) (trial court erred when it determined that defendant had implicitly waived his right to .counsel when he appeared for trial without making arrangements to hire an attorney); Leslie v. State, 703 So.2d 1029 (Ala.Crim.App.1997) (reversing conviction of a defendant who had “fired” his appointed counsel on the day of trial and was told to retain an attorney or proceed pro se, and failed to obtain another attorney after the case was continued); Stanley v. State, 703 So.2d 1027 (Ala.Crim.App.1997)(conviction reversed after the trial court refused to appoint counsel and forced defendant to represent himself, even though the defendant had “fired” two appointed attorneys and on the day of trial requested that new counsel be appointed).
As we did in the cases set out above, we conclude that, under the facts of this case, Peake was denied his constitutional right to counsel. Peake did not explicitly or implicitly.waive his right to counsel. Even though Peake had retained counsel who was willing to represent him but requested a continuance, the trial court forced Peake to represent himself and then incarcerated him overnight.
The judgment of the trial court is reversed, and the cause is remanded for further procéedings consistent with this opinion. • -
REVERSED AND REMANDED.
WINDOM, P.J., and.KELLUM and BURKE,, JJ., concur. JOINER, J., . concurs in the result.

. Peake’s first name is spelled both "Johnathon” and "Jonathon” in the record. In this opinion we are using "Jonathon,” the spelling Peake uses in his notice of appeal.

. The transcript of the trial proceedings and the transcript of a pretrial hearing about a possible conflict of interest between Peake and Greene are separately paginated. Citations to the trial proceedings will be designat *1251 ed "(R.)” and will be followed by the relevant page numbers of that transcript. Citations to the hearing on the possible conflict will be designated “(R2.)” and will be followed by the relevant page numbers of that transcript.

. Some of the court’s questions appear to have been directed toward the six factors discussed in Tomlin v. State, 601 So.2d 120, 124 (Ala.Crim.App.1989), to be weighed in determining whether a defendant knowingly, intelligently, and voluntarily waived his right to counsel.